IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

OTHO L. TAYLOR,

                          Plaintiff,

    v.                                      Civil Action No. 3:10-CV-149

DEUTSCHE BANK NATIONAL TRUST CO.,

                          Defendant.

**MEMORANDUM OPINION**

THIS MATTER is before the Court on Defendant Deutsche Bank National Trust Company's Motion for Summary Judgment. For the reasons that follow, the Court will GRANT the Motion.

**I. BACKGROUND**

The following facts are not in dispute. In October 2007 Plaintiff Otho L. Taylor entered into a refinance credit consumer transaction with Delta Funding Corporation (Delta Funding) in which Taylor was the borrower and Delta Funding was the creditor. Delta Funding retained the deed of trust for Taylor's primary residence to secure the loan, the proceeds of which were applied to the costs of the loan, existing mortgages on the home, and consumer debts. The principal amount of the loan was $170,010. (Pl.'s Ex. C, at 1). Delta Funding disclosed the amount financed as $162,911.28. (Pl.'s Ex. F, at 1).The amount of the disclosed prepaid finance charge was $7,098.72, calculated as the principal amount of the loan less the amount financed. (Def.'s Mem. Supp. Summ. J. 3). The prepaid

1

finance charge consisted of settlement fees—including administrative, broker, processing, delivery, and recording fees—but did not include other fees incurred incident to the transaction, such as a $245 charge for "abstract or title search," a $395 "title examination" fee, and a $31 "release" charge associated with either Taylor's prior mortgage or another lien. (Pl.'s Ex. C, at 2; Def.'s Mem. Supp. Summ. J. 3-4, 10). Delta instead included these fees, which totaled $2,563.48, in the amount financed. (Def.'s Mem. Supp. Summ. J. 8).

Deutsche Bank National Trust Company (Deutsche Bank) later became the assignee of the note. Taylor defaulted on the loan, last making a payment in 2008. (Johnson Decl. ¶¶ 7-8). After Deutsche Bank initiated foreclosure proceedings through its substitute trustee Samuel I. White, P.C. (White) in October 2009, Taylor, by counsel, claimed rescission of the credit transaction pursuant to the federal Truth-in-Lending Act. (Pl.'s Ex. I). Upon receipt of the notice, Deutsche Bank cancelled the foreclosure sale scheduled for November 2009.

Later in November 2009, Deutsche Bank notified Taylor that it did not agree that TILA rescission was available to him. (Pl.'s Ex. J). White then scheduled another foreclosure for March 2010. Taylor, by counsel, responded to White's action by sending another rescission claim and by filing the instant Complaint seeking enforcement of the rescission action and asking the Court to alter the timing of tender to allow him time to sell the home or raise the funds to tender the principal amount of the loan back to the bank.

Following discovery, Defendant Deutsche Bank filed this Motion for Summary Judgment.

## II. LEGAL STANDARD

A motion for summary judgment lies only where "there is no genuine issue as to any material fact" and where "the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). All "factual disputes and any competing, rational inferences [are resolved] in the light most favorable to the party opposing that motion." Rossignol v. Voorhaar, 316 F.3d 516, 523 (4th Cir. 2003) (internal quotation marks and citations omitted). In making its decision, a court must look to the affidavits or other specific facts pled to determine whether a triable issue exists. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-49 (1996). "[I]f the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law," Fed. R. Civ. P. 56(c), it is the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." Drewitt v. Pratt, 999 F.2d 774, 778-79 (4th Cir. 1993) (internal quotation marks omitted). "Mere unsupported speculation is not sufficient to defeat a summary judgment motion if the undisputed evidence indicates the other party should win as a matter of law." Francis v. Booz, Allen & Hamilton, Inc., 452 F.3d 299, 308 (4th Cir. 2006). Summary judgment should not be granted, however, if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.

## III. DISCUSSION

The federal Truth-in-Lending Act (TILA) regulates the relationship between lenders and borrowers to facilitate the "informed use of credit" by "assur[ing] a meaningful

disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him." 15 U.S.C. § 1601(a) (2006). To that end, TILA requires that creditors make certain disclosures to borrowers, including disclosures of the finance charge and of the borrower's right to rescind the transaction if the creditor retains a security interest in the borrower's principal dwelling. Id. §§ 1635(a), 1638(a). A creditor's failure to provide proper notice or make required disclosures enables the borrower to rescind the credit transaction within three years of closing. Id. §§ 1635(a),(f). Upon a debtor's valid rescission claim, "he is not liable for any finance or other charge, and any security interest given by the obligor . . . becomes void." Id. § 1635(b). A failure to make the required disclosures, or a failure to recognize a valid rescission, also subjects a lender to statutory damages of up to $1,000 per offense. See 15 U.S.C. § 1640(a)(2)(A)(ii).

**A. Notice of the Right to Rescind**

For notice of a borrower's right of rescission to be proper under TILA, a creditor must provide that notice in a separate document that "clearly and conspicuously disclose[s]" the right to rescind. 15 U.S.C. § 1635(a). Pursuant to authority delegated by Congress, 15 U.S.C. §§ 1604(b), the Board of Governors of the Federal Reserve System has promulgated a set of model notice forms as part of its comprehensive TILA regulations known as Regulation Z. See 12 C.F.R. §§ 226.1-226.59 (2010); id. § 226 apps. G, H. To comply with the notice requirements, a creditor must use either one of these model forms or a "substantially similar notice." Id. § 226.23(b)(2); see also 15 U.S.C. § 1604(b).

Delta Funding provided Plaintiff Taylor with a one-page document entitled "Right to Cancel." (Pl.'s Ex. G). This notice of Taylor's right to rescind uses the exact language

4

provided in Regulation Z's model rescission notice. See 12 C.F.R. § 226, App. H-8. While the Plaintiff acknowledges that "the notice of right to cancel, taken alone, was in proper form," he contends that a separate arbitration agreement, with its own cancellation provisions, "essentially contradicted [his] rights under TILA" and undermined the right to rescind. (Pl.'s Mem. Opp'n Summ. J. 12-13). That agreement, described in a separate four-page document, includes the right to cancel the arbitration agreement within thirty days. (Pl.'s Ex. H, at 3).

The arbitration agreement's cancellation provision states, "To cancel this Arbitration Agreement after the closing, you must mail a letter stating **'I wish to cancel the Arbitration Agreement in connection with loan number 0103500518'**. . . ." Id. The agreement continues by identifying the address to which the borrower must mail the letter, providing the thirty-day deadline for cancellation, and listing other information that the letter must include: borrower's name, address, and phone; loan number; and date of cancellation. Id. The final paragraph of the arbitration agreement's cancellation provision notifies the signer that "**You cannot cancel at closing, and no other method can be used to cancel this Arbitration Agreement after the closing.**" Id.

The Plaintiff argues that because the requirements for cancelling the arbitration agreement were "drastically different" from those for rescinding the entire credit transaction, the presence of the arbitration agreement limited Taylor's ability to rescind the credit transaction. (Pl.'s Mem. Opp. Summ. J. 13). To support this argument, he cites a Fourth Circuit case holding that a plaintiff's notice of rescission is only a "claim seeking rescission" until "the creditor acknowledges that the right of rescission is available, or

5

[until] the appropriate decision maker has so determined." Am. Mortg. Network, Inc. v. Shelton (Shelton), 486 F.3d 815, 821 (4th Cir. 2007) (quoting Large v. Conseco Finance Servicing Corp., 292 F.3d 49, 54-55 (1st 2002)). Plaintiff's argument misses the critical point entirely. The question is, does the existence of the arbitration cancellation provision negate a separate and clear notice of the right to rescind the entire credit transaction. The obvious answer is no.

Nothing in TILA either forbids separate arbitration agreements or requires creditors to use identical cancellation language and requirements in rescission notices and other provisions associated with credit transactions. Delta Funding provided Taylor with notice of his right to cancel in a separate document using the exact language modeled in Regulation Z. The arbitration agreement was a separate agreement with clearly identified cancellation provisions. The fact that the documents' cancellation requirements were different has no effect on the clarity and conspicuousness of the rescission notice. Therefore, the Court finds that the rescission notice satisfies TILA's requirements.

## B. Disclosure of the Finance Charge

TILA requires creditors to disclose to borrowers the finance charges associated with credit transactions, and failure to disclose properly is grounds for rescission within three years of consummation of the credit transaction. 15 U.S.C. § 1635(f). For a property that has entered foreclosure, the disclosed finance charge is considered "accurate . . . if the disclosed finance charge: (i) is understated by no more than $35; or (ii) is greater than the amount required to be disclosed." Id. § 226.23(h)(2). TILA defines the finance charge as

"the sum of all charges, payable directly or indirectly by the person to whom credit is extended, and imposed directly or indirectly by the creditor as an incident to the extension of credit." 15 U.S.C. § 1605(a). It "does not include charges of a type payable in a comparable cash transaction." Id. Regulation Z lists several charges that are not considered finance charges, such as credit application fees, charges for late payments or exceeding credit limits, and seller's points. 12 C.F.R. § 226.4(c). Real-estate related fees are also excluded from the finance charge, if they are "bona fide and reasonable in amount." Id. § 226.4(c)(7). Examples of excludable real estate fees include title examination fees, credit-report fees, and fees for preparing loan-related documents. Id.

At the time of closing, Delta disclosed the prepaid finance charge as $7,098.72. Defendant Deutsche Bank now calculates the actual finance charge as $6,842.27, representing a disclosure that was $256.45 greater than the amount required to be disclosed. (Def.'s Mem. Supp. Summ. J. 3-4). Because the disclosed finance charge is greater than the amount required to be disclosed, it is acceptable under Regulation Z. See 12 C.F.R. § 226.23(h)(2).

The Plaintiff does not dispute these amounts but instead argues that Delta Funding impermissibly excluded some charges from the finance charge calculation. First, he argues that two of the title-related fees charged by Delta Funding were neither bona fide nor reasonable because they constituted either double-charging or "hidden finance charge[s]" that should not have been excluded from the disclosed finance charge. (Pl.'s Mem. Opp'n Summ. J. 17). Taylor first challenges the $395 title examination and the $245 abstract fee, alleging that the "imposition of both fees constitutes a form of double charging" and

7

arguing that the double charging is neither bona fide nor reasonable. Id. Secondly, the Plaintiff suggests that the $395 title examination fee, the $31 release charge included in the $77 recording fee, and other title-related fees were unreasonable. He provides information from the Internet showing title examination fees from a variety of providers and notes that none exceed $250. Thus, he argues, "[a]t least $145 of that [title examination] fee was unreasonable and a hidden finance charge." (Pl.'s Mem. Opp'n Summ. J. 17).

The Plaintiff's arguments are unsupported and unpersuasive. His double-charging argument lacks merit not only because Regulation Z recognizes both title examination fees and abstract fees as excludable from finance charge calculations, see 12 C.F.R. § 226.4(7)(i), but also because the Settlement Statement clearly indicates that those fees were paid to different companies. (Pl.'s Ex. C, at 2). Similarly, the Plaintiff has no admissible evidence to support his assertion that the fees are unreasonable. The evidence from his Internet searching was not provided in discovery and is therefore not admissible at trial. Furthermore, that searching is not sufficient to make the Plaintiff an expert suitable to testify to the bona fides or reasonableness of real estate fees included in prepaid finance charges in an October 2007 transaction. Even if the Court were to assume the veracity of Taylor's allegations, these averments would merely establish that Taylor paid more for the title examination fee than another borrower might have.

In the absence of any evidence regarding the extent to which Delta Funding augmented its return through these or other fees and without any expert testimony on the prevailing rates for these fees on properties similar to Taylor's in October 2007, the Plaintiff has failed to show that the fees were neither bona fide nor reasonable. Therefore,

the Court finds that the disclosed finance charge fell within Regulation Z's tolerance range and satisfied TILA's requirements.

**C. Plaintiff's Ability to Tender**

The Defendant also argues that the Complaint should fail as a matter of law because the Plaintiff failed to allege any ability to tender the principal amount of the loan back to the bank, as is required in TILA rescission actions in the Fourth Circuit. See Shelton, 486 F.3d at 819-22 ("The equitable goal of rescission under TILA is to restore the parties to the status quo ante." (internal quotation marks and citation omitted)). Under Shelton, a borrower seeing TILA rescission of a credit transaction secured by his primary residence must show that he has the ability to tender the proceeds of the loan to his creditor in return for the release of the security interest upon his property. Id. at 821. Regulation Z grants courts the authority to modify the procedures that follow a borrower's rescission of a credit transaction, including the procedures associated with tender. 12 C.F.R. § 226.23(d)(4). The Plaintiff asks the Court to use that authority to alter the timing of tender to enable him to raise the funds to tender by, if necessary, selling the home.

This Court ruled against a plaintiff on the issue of tender in Hudson v. Bank of America, N.A., No. 3:09-CV-462, 2010 WL 2365588 (E.D. Va. June 11, 2010). In that case, the Court granted a motion to dismiss and found that the Plaintiff failed to show that he might be able to tender the funds necessary to complete rescission. That plaintiff needed more time to seek refinancing or a buyer for the home, planned to use the damages awarded in the case to provide additional funds needed to tender, and was unsure of the exact amount he would have been required to tender. Id. at *5. This Court, "given the context of the case

9

and the Court's judicial experience . . . [could not] reasonably conclude that Hudson [would have been] able to pay the . . . unknown amount due within a reasonable period of time following the resolution of [that] matter." Id.

Taylor is in a situation similar to that of the plaintiff in Hudson, although he does purport to know the amount of tender. Nonetheless, aside from asking the Court for more time and indicating that he would be willing to sell the house "as a last resort" (Pl.'s Mem. Opp'n Summ. J. 19), Taylor has not shown that he is able to tender the funds necessary to complete rescission. Therefore, he has not met that requirement of a valid rescission claim.

## IV. CONCLUSION

Because Delta Funding provided the proper notice of the right to rescind and properly delivered the material disclosures, and because Taylor has not shown his ability to tender, Taylor does not have the right to rescind the credit transaction. Therefore, the Court GRANTS Defendant's Motion for Summary Judgment.

Let the Clerk send a copy of this Memorandum to all counsel of record. An appropriate order will issue.

It is SO ORDERED.

> /s/
> James R. Spencer
> Chief United States District Judge

ENTERED this __18th__ day of October 2010